IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-36 |
| | § | C.A. No. C-06-492 |
| JORGE PARRA-SOTELO, | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jorge Parra-Sotelo's ("Parra-Sotelo") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which was received by the Clerk on November 6, 2006. (D.E. 48.)[1] Parra-Sotelo has also filed a motion for evidentiary hearing. (D.E. 49.) On January 16, 2007, the government filed a response and motion for summary judgment, as well as an alternative motion to dismiss. (D.E. 51, 52.) Parra-Sotelo had until February 19, 2007 to file a reply (D.E. 50); to date, no reply has been received.

As discussed herein, Parra-Sotelo's claims are subject to dismissal because he waived his right to file those claims. Although one of his claims is couched as a claim that his plea was not knowing or voluntary, which would arguably fall outside the scope of his waiver. This claim fails on its merits. For these reasons, the Court DENIES his § 2255 motion and concludes that no evidentiary hearing is necessary, so DENIES his motion for evidentiary hearing. (D.E. 49.) Additionally, the Court DENIES Parra-Sotelo a Certificate of Appealability ("COA").

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entries refer to the criminal case.

1

## II.  FACTS AND PROCEEDINGS

**A.    Summary of Offense[2]**

On January 18, 2004, Reyes Casique-Arreguin drove a 1992 white Ford F-150 into the checkpoint for inspection.  Casique-Arreguin advised that he was en route from Reynosa, Mexico and that the vehicle belonged to a friend.  During the immigration interview, a drug service canine alerted to the front of the vehicle and Casique-Arreguin consented to a further search.  Once in secondary, agents discovered that the entire top half of the engine had recently been replaced, although Casique-Arreguin stated that he was unaware of any recent repairs to the vehicle.  Casique-Arreguin stated again that the vehicle belonged to a friend who was going to pay him $200 to drive the vehicle from Reynosa, Mexico, to Houston, Texas.  Casique-Arreguin advised that his friend was a few minutes behind and that he would be driving a similar truck.

Shortly thereafter, Parra-Sotelo drove a 1996 Ford F-150 into the checkpoint.  A drug service canine alerted to the front underside of the vehicle and Parra-Sotelo consented to a further search.  In addition, Parra-Sotelo appeared nervous, was avoiding eye contact with the agent and repeatedly opening and closing his wallet.  He advised that he was en route from Reynosa, Mexico.  In the secondary inspection area, Casique-Arreguin identified Parra-Sotelo as his friend; however, Parra-Sotelo advised the agent that he was traveling alone.

An inspection of the engine interior of the vehicle driven by Casique-Arreguin revealed 13 bundles of cocaine (79% purity) with a net weight of 3,986 kilograms.  The bundles were wrapped in black tape.  An inspection of the engine interior of the vehicle driven by Parra-Sotelo revealed an identical method of concealment.  A total of 12 bundles of cocaine (90% purity) with a net weight of

---

[2] The facts of the offense are derived from Paragraphs 4 through 10 of Parra-Sotelo's Presentence Investigation Report ("PSR").

3,991 kilograms were discovered. The estimated value of the 25 bundles of cocaine (7.9 kilograms) was $806,400.

After an agent told Parra-Sotelo that Casique-Arreguin had identified him, Parra-Sotelo stated that he was traveling with Casique-Arreguin. Parra-Sotelo advised that an individual hired him to purchase two trucks and return the trucks to Mexico. This individual provided Parra-Sotelo with money to purchase the trucks in Houston, Texas. Parra-Sotelo hired Casique-Arreguin to drive one of the two trucks from Mexico. Upon arriving in Mexico, the individual provided Parra-Sotelo with two trucks. Parra-Sotelo stated that he knew the trucks contained something illegal.

Information from two cooperating individuals revealed that Casique-Arreguin was contacted by Parra-Sotelo through friends of Casique-Arreguin and that Casique-Arreguin had agreed to transport a truck from Reynosa, Mexico, to Houston, Texas in exchange for $200. Once provided the trucks in Mexico, Parra-Sotelo instructed Casique-Arreguin to drive to a gasoline station in McAllen, Texas. He also assured Casique-Arreguin that the vehicles did not contain drugs. Once at the gas station, Parra-Sotelo paid for the gasoline on both vehicles, gave Casique-Arreguin $30.00 for expenses. According to one of the cooperating individuals, Parra-Sotelo was to be paid $2,000 for transporting both trucks to Houston and Parra-Sotelo was going to pay Casique-Arreguin $200 plus expenses for his assistance.

Based on the information provided by the cooperating individuals, Parra-Sotelo was immediately arrested and Casique-Arreguin was released.

**B.     Criminal Proceedings**

On February 11, 2004, a single-count indictment was filed against Parra-Sotelo charging him with knowingly and intentionally possessing with intent to distribute approximately 7.9 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 1.) On March 31, 2004,

Parra-Sotelo pleaded guilty to the indictment pursuant to a written plea agreement with the government. (D.E. 10, 11.) In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend a sentence at the low end of the applicable guideline range and to recommend that he be given a three-level credit for acceptance of responsibility. (D.E. 11 at ¶ 2.)

The plea agreement included a voluntary waiver of Parra-Sotelo's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 11 at ¶ 8 (emphasis in original).) The agreement was signed by both Parra-Sotelo and his counsel. (Id. at 5.)

At Parra-Sotelo's rearraignment, the Court specifically questioned Parra-Sotelo under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion:

> **THE COURT**: I want to – before you go forward with the Plea Agreement, which is the next step is to outline the Plea Agreement, I want to make sure that you understand that this plea calls for you to give up some very important rights that are personal to you, they only belong to you and not to your attorney, and only you can give them up; one of which is a right to appeal any sentence that I impose or your conviction or any application of mine of the guidelines, except in a limited circumstance as to the appeal, if I should – you would be allowed to appeal if I give you a sentence that is higher than the statutory maximum, which is life, so that would be unusual, or if I

4

>   upwardly depart without a motion from the U.S. Attorney. You can
>   appeal in those two circumstances. Do you understand that?
>
>   **THE DEFENDANT**: Yes, I understand.
>
>   **THE COURT**: Do you want to waive your appeal and go forward
>   with this Plea Agreement?
>
>   **THE DEFENDANT**: Yes, I'll continue with the agreement.
>
>   **THE COURT**: You also give up a right, the post-conviction remedy,
>   which is independent of any right to appeal. If you want to attack your
>   – set aside your conviction or your sentence, you can attempt to do so
>   usually by what's called a statutory 2255 or post-conviction remedy
>   or writ of habeas corpus, and you can set aside or attempt to set aside
>   the conviction or sentence claiming lack of jurisdiction,
>   consitution[al][3] claims, or such matters as ineffective assistance of
>   counsel. But if you go forward with this today, you give up that right
>   forever.
>
>   Do you understand that?
>
>   **THE DEFENDANT**: Yes, I understand..

(D.E. 40, Rearraignment Transcript ("R. Tr.") at 15-16.)

The Assistant United States Attorney then summarized Parra-Sotelo's plea agreement, including a reference to the waiver of § 2255 rights. (R. Tr. at 17.) The Court showed Parra-Sotelo a written copy of the plea agreement. (R. Tr. at 18.) He testified that the document was his plea agreement, that it was read to him completely in Spanish and that he had discussed it completely with his attorney before he signed it. (R. Tr. at 18-19.) Parra-Sotelo also testified that no one promised him anything that is not contained in the plea agreement. (R. Tr. at 19.) Parra-Sotelo further testified that no one had forced him to plead guilty and that his decision to do so was entirely voluntary. (R. Tr. at 25.) It is clear from the foregoing that Parra-Sotelo's waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

---

[3] The transcript says "constitution of claims," rather than "constitutional claims." The latter is correct.

5

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report. (D.E. 12.)  The PSR calculated Parra-Sotelo's base offense level for the offense at 32 based on the 7.9 kilograms of cocaine. (PSR at ¶¶ 14-15.) It recommended that Parra-Sotelo be given a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 29.  (PSR at ¶¶ 14-24.)  When coupled with his criminal history category of II, his resulting guideline sentence for a term of imprisonment was 120 to 121 months.  (PSR at ¶¶ 30, 45.)

Sentencing was held on July 16, 2004. (D.E. 18; <u>see generally</u> D.E. 41, Sentencing Transcript ("S. Tr.").)   No objections to the PSR were filed or made at sentencing, and Parra-Sotelo informed the Court that there were no mistakes in the PSR.  (S. Tr. at 6.)  Consistent with its obligations in the plea agreement, the government recommended a sentence of 120 months.  (S. Tr. at 7.)  Defense counsel also asked for 120 months, the lowest end of the guideline range. (S. Tr. at 7.)  The Court sentenced Parra-Sotelo to 120 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release.  (S. Tr. at 7.)  The Court also imposed a $200 fine and a $100 special assessment.  (S. Tr. at 7, D.E. 20.)  Judgment of conviction and sentence was entered July 27, 2004.  (D.E. 20.)

Despite his waiver of appellate rights, Parra-Sotelo appealed.  (D.E. 19.)  The Fifth Circuit affirmed in a per curiam opinion issued June 21, 2005.  (D.E. 46.)  In its opinion, the appellate court also noted that Parra-Sotelo's waiver did not bar his appellate claim, which challenged his conviction, because he waived his right to appeal only his sentence.  (D.E. 46 at 1-2.)  He filed a petition for writ of certiorari, which the Supreme Court denied on November 7, 2005.  (D.E. 47.)

Parra-Sotelo's timely § 2255 motion was received by the Clerk on November 6, 2006. (D.E. 48.)  It is timely.

### III. MOVANT'S ALLEGATIONS

In his motion, Parra-Sotelo lists five grounds for relief. First, he claims that he was denied effective assistance of counsel due to numerous alleged errors by his counsel at sentencing and on appeal, and due to a failure to investigate issues for sentencing. Second, he claims that his sentence violates his constitutional rights because he was sentenced under mandatory sentencing guidelines, and because those guidelines are now advisory after United States v. Booker, 543 U.S. 220 (2005).[4] Third, he claims that the Court should have given him a reduction for being a minor participant in the offense pursuant to U.S.S.G. § 3B1.2. Fourth, he claims that his "conviction was obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of charge and consequences of his plea." (D.E. 48 at 4.) Fifth and finally, he claims that the Court lacked subject matter jurisdiction over his case.

The government has moved for summary judgment against Parra-Sotelo's motion in its entirety on the grounds that it is barred by his waiver of § 2255 rights. In the alternative, the government contends that his motion is subject to dismissal because the record in the case conclusively shows that no relief is appropriate as to his underlying allegations. (D.E. 52.)

For the reasons set forth herein, Parra-Sotelo's claims fail.

### IV. DISCUSSION

**A.   28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set

---

[4] Although this Court does not reach the merits of his claim pursuant to Booker, it nonetheless notes that Parra-Sotelo was sentenced to the statutory mandatory minimum for the offense to which he pleaded guilty. Even if the Court had been treating the guidelines as advisory, then, the Court could not have departed below the statutory minimum that Parra-Sotelo received. United States v. Farias, 469 F.3d 393, 401 & n.26 (5th Cir. 2006). All of the challenges to his sentence fail on this ground, too. That is, even if the Court had reduced his offense level for his role in the offense, he still could not have been sentenced to less than the sentence he received.

7

aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Parra-Sotelo has procedurally defaulted his claims by failing to raise them on appeal. Rather, the Court concludes that he validly waived his first, second, third, and fifth claims. These claims all fall within the scope of his waiver, and thus the Court does not reach the merits of those claims. See infra Section IV.C.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing, post-Booker, a waiver of appeal rights that was signed prior to the issuance of Booker).

His fourth claim, however, arguably falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver. See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to this claim.

8

**B.     Challenges to Guilty Plea**

In identifying his fourth claim, Parra-Sotelo makes the conclusory claims that his guilty plea was "unlawfully induced" and not made voluntarily or with an understanding of the charge and consequences of the plea. (D.E. 48 at 4.) In describing his supporting reasons and the facts behind his claim, however, Parra-Sotelo clarifies that he believes he was illegally indicted because the government improperly printed his name in all capital letters in the indictment. His legal name only contains three capital letters, and thus he claims that he was not legally indicted. He claims that, had he known that the indictment was subject to dismissal as a result of this error, he would not have pleaded guilty. (D.E. 48, Supporting Mem. at 11-12.)

To the extent this claim could be construed to fall outside the scope of his waiver, it fails on its merits. He cites to no authority, and this Court can imagine none, in support of his claim that an indictment is subject to dismissal because the person named therein is named in all capital letters. See, e.g., United States v. Furman, 168 F. Supp. 2d 609, 613 (E.D. La. 2001) (rejecting identical argument and noting that Fed. R. Crim. P. 7(c)(1), governing the form of indictments, allows for imperfections of form that are not prejudicial); id. at 613 ("the Fifth Circuit held long ago that a 'name need not be correctly spelled in an indictment, if substantially the same sound is preserved.'" (quoting Thibodeau v. United States, 361 F.2d 443, 444 (5th Cir. 1996)). Thus, there was no grounds for the dismissal of his indictment. The fact that Parra-Sotelo was not aware of a non-existent ground for dismissal thus does not affect the validity of his guilty plea.

Parra-Sotelo also challenges the validity of the plea agreement because he claims it was made under "invalid law, the mandatory United States Sentencing Guidelines." (D.E. 48, Supporting Mem. at 19.) He seems to be arguing that the plea agreement is invalid because both his counsel and the prosecuting AUSA committed a "conspiracy of silence" because they "knew and should have

9

disclosed that the mandatory nature of the guidelines was illegal." (D.E. 48, Supporting Mem. at 19-20.)

As to this claim, the Court notes first that Booker, which held that the mandatory nature of the federal sentencing guidelines was unconstitutional, was not decided until months after Parra-Sotelo's sentencing. Moreover, at the time of Parra-Sotelo's plea, Booker's predecessor, Blakely v. Washington,[5] had not even been decided. Similarly, at the time of his sentencing, the Fifth Circuit had held that Blakely did not apply to the federal guidelines. See United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004).[6] Thus, contrary to his assertions, neither defense counsel or the AUSA could have "known" that the guidelines were unconstitutional, either at the time of the plea agreement or at the time of sentencing. Instead, binding authority at both times indicated that the federal guidelines were in fact constitutional.

Additionally, the mere fact that neither Parra-Sotelo nor his counsel anticipated Booker does not invalidate his § 2255 waiver, nor place his claims pursuant to Booker outside the scope of the waiver. The Fifth Circuit has clearly held that "Blakely and Booker do not alter the plain meaning of appeal-waiver provisions in valid plea agreements." McKinney, 406 F.3d at 746-47 & n.5; see also, e.g., United States v. Killgo, 397 F.3d 628, n.2 (8th Cir. 2005) (enforcing waiver of appeal rights as to Sixth Amendment claim, noting that "[t]he fact that [defendant] did not anticipate the Blakely or Booker rulings does not place the issue outside the scope of his waiver"); United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (upholding waiver of appeal rights signed prior to Blakely in case raising Booker claim); United States v. Bradley, 400 F.3d 459, 465-66 (6th Cir. 2005) (enforcing

---

[5] Blakely v. Washington, 124 S. Ct. 2531 (2004), Booker's predecessor, dealt with a state's sentencing guidelines. The Booker court extended the reasoning of Blakely to the federal guidelines.

[6] Pineiro was decided on July 12, 2004, four days before Parra-Sotelo's sentencing, and was overruled by Booker on January 12, 2005.

10

defendant's waiver of appeal signed prior to Booker as barring his Booker claim and collecting federal circuit court authority in agreement).

Finally, for the reasons set forth supra at note 4, any claim pursuant to Booker does not entitle Parra-Sotelo to relief because he was sentenced to the mandatory statutory minimum for his offense. Thus, even if the guidelines had been advisory, he could not have received a lesser sentence, absent a motion by the government for a downward departure for substantial assistance.[7] Indeed, the Fifth Circuit has squarely held that a judge does not have discretion under Booker to sentence below a mandatory minimum. United States v. Farias, 469 F.3d 393, 401 & n.26 (5th Cir. 2006), petition for rehearing denied, __ F.3d __, 2007 WL 731370 (5th Cir. Mar. 12, 2007). His plea bargain is therefore enforceable.

Because the Court concludes that Parra-Sotelo's challenges to the validity of his plea agreement fail, the Court finds that his plea agreement and his waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of his waiver of § 2255 rights on his remaining claims.

**C.     Waiver of § 2255 Rights**

It is clear from the rearraignment that Parra-Sotelo understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 15-16.) See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Parra-Sotelo's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; United States

---

[7] Another avenue permitting a defendant to be sentenced below a statutory mandatory minimum is the so-called "safety valve," as described in 18 U.S.C. § 3553(f). Parra-Sotelo did not qualify for safety valve relief, however, because he had three criminal history points. See 18 U.S.C. § 3553(f)(1) (requiring that a defendant have no more than one criminal history point, in addition to meeting a number of other criteria, in order to qualify for safety valve relief); see also U.S.S.G. § 5C1.2.

v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002) (the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy"). Parra-Sotelo's testimony at his rearraignment supports the Court's conclusion that his wavier was knowing and voluntary. (See supra at 4-6.) Parra-Sotelo's remaining claims clearly fall within the scope of that waiver.

In sum, while Parra-Sotelo's claims challenging his plea are denied on the merits, his remaining claims fall within the scope of his waiver. Therefore, they are not properly before the Court. For these reasons, Parra-Sotelo's § 2255 motion is DENIED in its entirety.

### D.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Parra-Sotelo has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires

a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Parra-Sotelo is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his challenges to his plea. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of the remainder of his claims.

## V. CONCLUSION

For the foregoing reasons, Parra-Sotelo's motion under 28 U.S.C. § 2255 (D.E. 48) is DENIED, and his motion for an evidentiary hearing (D.E. 49) is DENIED. The Court also DENIES Parra-Sotelo a Certificate of Appealability.

ORDERED this 22nd day of March, 2007.

_____
Janis Graham Jack
United States District Judge